UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EUGENIE FRANCOIS,

                                Plaintiff,

              - against -

NEW YORK CITY DEPARTMENT OF
EDUCATION,

                              Defendant.

**OPINION AND ORDER**

19 Civ. 11119 (ER)

Ramos, D.J.:

       Eugenie Francois brings this action *pro se* against the New York City Department of Education (the "Department"). Doc. 1. Francois is a former Department teacher who alleges that school administrators discriminated against her, created a hostile work environment, and constructively discharged her on the basis of her age. Francois's claims are brought under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634 ("ADEA"); New York State Human Rights Law, New York Executive Law §§ 290–297 ("NYSHRL"); and New York City Human Rights Law, New York City Administrative Code §§ 8-101–131 ("NYCHRL").

       Pending before the Court is the Department's motion to dismiss the complaint. Doc. 14. For the reasons set forth below, the motion is GRANTED.

I.      BACKGROUND

      A.      **Factual Background**

       Francois was born in 1955 and began working as a teacher for the Department in 1991. Doc. 1 at 8. Starting in 2003, Francois taught high school biology and the living environment regents at Midwood High School in Brooklyn, New York. *Id.* Francois received satisfactory or

effective ratings for each year of her employment with the Department, with the exception of the 2016-2017 school year, for which Francois received an ineffective rating. *Id.*

On four separate occasions between 2014 and 2016, the school's principal, Michael McDonnell, and assistant principal, Tovia Rosenfeld, made comments towards Francois, noting her status as an older teacher, highlighting her relatively higher salary compared to younger teachers, and reminding her that, despite her age, Francois had a maximum of four minutes to travel from one part of the school to another to get to her next assigned class. *Id.* ¶¶ 1–2, 5, 12.

During the course of the 2014-2015 and 2015-2016 school years, Francois filed an Annual Professional Performance Review ("APPR") complaint against the school administration, requested a video tape of her formal observation, and filed APPRs for formal and informal observations, all of which McDonnell denied. *Id.* ¶¶ 4, 6–8, 11, 14.

On April 5, 2016, Rosenfeld issued an effective rating to a younger teacher who taught higher-performing students in the discipline of earth sciences, while issuing Francois a developing rating, although Francois taught lower-performing students in the discipline of biology to a passing rate of ninety-four percent on the living environment regents.[1] *Id.* ¶ 10. The following school year, while meeting with Rosenfeld on September 22, 2016, Francois agreed to a Teacher Improvement Plan, which assigned a younger teacher with a chemistry discipline to assist Francois's biology class. *Id.* ¶ 13.

On February 27, 2017, Francois was assigned another younger co-teacher. *Id.* ¶ 15. Although this co-teacher was only responsible for seven of the twenty-six students in Francois's class, the co-teacher received a higher rating than did Francois. *Id.* On June 5, 2017, Francois was absent after becoming ill and requiring oral surgery. *Id.* ¶ 20. Because she could not make

---

[1] According to Francois, a passing rate of ninety-four percent on the living environment regents exceeded growth expectations for "low level performing students." Doc. 19 at 15.

it to school that day, Francois's husband delivered to Rosenfeld a package containing a note from Francois's doctor. *Id.* The note excused Francois from teaching through June 30, 2017. *Id.* After having received this note, Rosenfeld emailed Francois on June 6, 2017 noting Francois's absences on June 5 and June 6, 2017 without acknowledging the note from Francois's doctor. *Id.* ¶ 21. In this same email, Rosenfeld advised Francois that she would visit her classroom again on June 7, 2017. *Id.* Three weeks later, while Francois remained absent due to illness, McDonnell and Rosenfeld issued Francois an ineffective formal observation because of her absence. *Id.* ¶ 22. In response to these events, Francois retired from the Department effective August 31, 2017. *Id.* ¶ 23. Francois had just reached sixty-two years of age upon retirement. *See id.* at 14.

On October 11, 2017, Francois went to the school to pick up her overall annual rating for the 2016-2017 school year. *Id.* ¶ 27. It was on that date that she learned of her ineffective rating for that school year. *Id.* Francois appealed the rating on April 30, 2018. *Id.* ¶ 28. On May 31, 2018, Francois received the Department's denial of her appeal. Doc. 19 at 10.

### B.    Procedural History

On August 10, 2018, Francois, represented by counsel, filed an Article 78 proceeding in New York supreme court. Doc. 15-1 at 2. Francois alleged that she experienced age discrimination in violation of the NYCHRL and that her unsatisfactory rating for the 2016-2017 school year was arbitrary and capricious and was discriminatory due to her age. *Id.* ¶ 26. Francois asked the court to expunge her ineffective rating and to convert it into an effective rating or "not rated," in addition to awarding her incidental damages and reasonable attorney's fees. *Id.* ¶¶ 27, 36.

On October 3, 2019, the court dismissed Francois's Article 78 proceeding, making three key findings: (1) that Francois failed to show that her ineffective rating for the 2016-2017 school year was arbitrary and capricious or made in bad faith, (2) that Francois failed to show that her ineffective rating was given in violation of lawful procedure or any substantial right, and (3) that Francois failed to raise an inference of age discrimination in violation of the NYCHRL. Doc. 15-3 at 7–8.

Francois appealed the state court's decision on October 24, 2019. Doc. 16 at 12. Francois additionally filed a motion to reargue and/or renew the court's decision on November 8, 2019. *Id.* The Department opposed Francois's motion. *Id.* at 12–13. Francois's appeal remains pending in state court, as does Francois's motion to renew and/or reargue. *Id.* at 13.

Meanwhile, on August 14, 2018, Francois filed a charge with the Equal Employment Opportunity Commission ("EEOC"). Doc. 1 at 6, 14. On November 5, 2019, Francois received a notice of right to sue from the EEOC. *Id.* at 6. The notice was dated October 30, 2019. *Id.* at 6, 13.

On December 4, 2019, Francois filed the instant action under the ADEA, NYSHRL, and NYCHRL. *Id.* at 4, 7. Francois alleged that the Department created a hostile work environment, unjustifiably gave her an ineffective rating for the 2016-17 school year, and constructively discharged her because of her age. *Id.* at 5. Francois seeks the reversal of her ineffective rating, in addition to damages for emotional distress stemming from the alleged constructive discharge. *Id.* at 6. On April 6, 2020, the Department filed the instant motion to dismiss. Doc. 14.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires that a complaint allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

4

570 (2007).  But if a plaintiff has "not nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Id.*  The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, the plausibility standard does not require the court to credit "legal conclusion[s] couched as . . . factual allegation[s]" or "naked assertions devoid of further factual enhancement."  *Id.*  "[T]he Court is required to accept as true the factual allegations contained in the Complaint."  *Brunson v. Duffy*, 14 F. Supp. 3d 287, 291 (S.D.N.Y. 2014) (citing *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008)).  A district court may consider the facts stated in the complaint, "documents appended to the complaint or incorporated in the complaint by reference," and "matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotations omitted).  "If the allegations, for example, show that the relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim" under Rule 12(b)(6).  *Jones v. Bock*, 549 U.S. 199, 215 (2007).  "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint."  *Ellul v. Congregation of Christian Brothers*, 774 F.3d 791, 798 n.12 (2d Cir. 2014) (citing *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008)).

A *pro se* plaintiff's complaint will be "held 'to less stringent standards than formal pleadings drafted by lawyers.'"  *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam)); *see also Young v. N.Y.C. Dep't of Educ.*, No. 09 Civ. 6621 (SS), 2010 WL 2776835, at *5 (S.D.N.Y. July 13, 2010).  Still, despite holding the *pro se* litigant to less stringent standards, the court requires that she plead facts

sufficient to "state a claim to relief that is plausible on its face." *Teichmann v. New York*, 769 F.3d 821, 825 (2d Cir. 2014) (citing *Iqbal*, 556 U.S. at 678). A court will construe the *pro se* litigant's pleadings and opposition papers "liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). However, "[n]aked assertions of [ ] discrimination . . . without any specific [factual] allegation of a causal link between the [d]efendants' conduct and the [p]laintiff's [protected characteristic] [are] too conclusory to withstand a motion to dismiss." *Sanders-Peay v. N.Y.C. Dep't of Educ.*, No. 14 Civ. 4534 (CBA) (MDG), 2014 WL 6473507, at *3 (E.D.N.Y. Nov. 18, 2014) (citing *Gaddy v. Waterfront Comm'n*, No. 13 Civ. 3322 (AT) (HBP), 2014 WL 4739890, at *5 (S.D.N.Y. Sept. 19, 2014)).

When a district court has original jurisdiction over a claim, that court wields the power to exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, when none of the claims providing the court with original jurisdiction remain before the court, the court may decline to exercise supplemental jurisdiction over the surviving claims. *Id.* § 1367(c)(3); *see also Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639–40 (2009); *Milord-Francois v. N.Y. State Off. of Medicaid Inspector Gen.*, No. 19 Civ. 179 (LJL), 2020 WL 5659438, at *24 (S.D.N.Y. Sept. 23, 2020). In determining whether to exercise supplemental jurisdiction over the remaining claims, the court should "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity . . . ." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). "When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early

stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Id.* (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966)).

### III. DISCUSSION

#### A. ADEA Claims

Francois asserts claims for discrimination, hostile work environment, and constructive discharge in violation of the ADEA. The Department argues that these claims are time-barred. In opposition, Francois argues that (1) the Department's alleged discriminatory conduct and hostile work environment constitute a continuing violation, delaying the commencement of the statute of limitations period and (2) the Department's denial of the appeal of her ineffective rating tolled the statute of limitations.

The ADEA prohibits an individual from commencing a civil action under the statute until sixty days after the individual has filed a charge with the EEOC alleging unlawful discrimination or until the individual has received a notice of right to sue from the EEOC. 29 U.S.C. § 626(d)–(e). Additionally, the individual must commence the civil action under the ADEA "within 300 days after the alleged unlawful practice occurred . . . ." *Id.* § 626(d)(1)(b); *see also Gindi v. N.Y.C. Dep't of Educ.*, 786 F. App'x 280, 282 (2d Cir. 2019) (summary order); *Solomon v. Fordham Univ.*, No. 18 Civ. 4615 (ER), 2020 WL 7711697, at *8 (S.D.N.Y. Dec. 29, 2020). Where an individual complains of a discrete act of employment discrimination, the 300-day period begins when the individual learns of the employer's alleged discriminatory conduct. *Siclari v. N.Y.C. Dep't of Educ.*, No. 19 Civ. 7611 (AJN), 2020 WL 7028870, at *4 (S.D.N.Y. Nov. 30, 2020). "'While discrete claims of discrimination . . . must be brought within the 300-day limitations period to be actionable, a different rule applies with regard to hostile work

environment claims.'" *Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 50 (S.D.N.Y. 2019) (quoting *Spence v. Bukofzer*, No. 15 Civ. 6167 (ER), 2017 WL 1194478, at *5 (S.D.N.Y. Mar. 30, 2017)). Where an individual "alleges a continuing violation like a hostile work environment, she 'need only show that part of the violation took place within the limitations period.'" *Siclari*, 2020 WL 7028870, at *4 (quoting *Anyanwu v. City of New York*, No. 10 Civ. 8498 (AJN) (THK), 2013 WL 5193990, at *9 (S.D.N.Y. Sept. 16, 2013)).

Under the continuing violation doctrine, "'[w]hen a plaintiff experiences a continuous practice and policy [that violates his or her rights], . . . the commencement of the statute of limitations period may be delayed until the last violation.'" *Massaro v. Bd. of Educ. of City Sch. Dist.*, No. 17 Civ. 8191 (LGS), 2021 WL 184364, at *3 (S.D.N.Y. Jan. 19, 2021) (quoting *Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018)). "To qualify as continuing, the claimed actions must not be discrete acts, but repeated conduct that occurs over a series of days or perhaps years." *Zoulas*, 400 F. Supp. 3d at 49–50 (quoting *Dash v. Bd. of Educ. of City Sch. Dist.*, 238 F. Supp. 3d 375, 388 (E.D.N.Y. 2017)). In other words, a continuing violation is necessarily "the result of a discriminatory policy or mechanism" that reoccurs over time. *See id.* at 50 (quoting *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993)); *accord James v. Van Blarcum*, 782 F. App'x 83, 84 (2d Cir. 2019) (summary order).

By contrast, multiple discrete incidents of discrimination—such as "disparate disciplining, negative performance reviews, termination, failure to promote, and denial of a preferred job position"—do not amount to a continuing violation. *Zoulas*, 400 F. Supp. 3d at 50. As such, a plaintiff's claims are time-barred "[w]here the plaintiff complains of discrete discriminatory or retaliatory acts" that occurred outside of the 300-day window, "even though they may be related to acts that occurred within the permissible 300-day period." *Id.* at 49

8

(quoting *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019)). Notably, district courts throughout the Second Circuit "heavily disfavor[]" applying the continuing violation doctrine and have been "loath to apply it absent a showing of compelling circumstances." *See, e.g.*, *Siclari*, 2020 WL 7028870, at *4 (quoting *Trinidad v. N.Y.C. Dep't of Corr.*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006)); *Stephens v. Hofstra Univ. Sch. of L.*, No. 01 Civ. 5388 (DRH) (MLO), 2005 WL 1505601, at *4 (E.D.N.Y. June 24, 2005); *Falinski v. Kuntz*, 38 F. Supp. 2d 250, 257 (S.D.N.Y. 1999). Courts in this District have found such compelling circumstances, for example, "when 'the unlawful conduct takes place over a period of time, making it difficult to pinpoint the exact day the violation occurred.'" *Davidson v. LaGrange Fire Dist.*, No. 08 Civ. 3036 (VB), 2012 WL 2866248, at *9 (S.D.N.Y. June 19, 2012) (quoting *Remigio v. Kelly*, No. 04 Civ. 1877 (JGK) (MHD), 2005 WL 1950138, at *8 (S.D.N.Y. Aug. 12, 2005)).

Here, Francois filed her charge of employment discrimination, hostile work environment, and constructive discharge with the EEOC on August 14, 2018. Thus, any alleged discrete discriminatory acts occurring prior to October 18, 2017—or more than 300 days before Francois filed her EEOC charge—are time-barred by the ADEA. *See* 29 U.S.C. § 626(d)(1)(b); *Solomon*, 2020 WL 7711697, at *8. Francois alleges the three most recent discriminatory acts took place on: (1) August 31, 2017, the date on which Francois alleges she was constructively discharged; (2) October 11, 2017, the date on which Francois first learned that she received an ineffective rating for the 2016-2017 school year; and (3) May 31, 2018, the date on which Francois received notice that the Department had denied the appeal of her ineffective rating. According to Francois, these three actions amount to the Department's continuing violation of the ADEA, as they indicate a continuous pattern of the Department's discriminatory practices over time. Thus,

according to Francois, the 300-day period in which she was required to file her EEOC charge for a hostile work environment did not start until the most recent instance of alleged discrimination on May 31, 2018. Francois argues that, because that last action took place only seventy-six days before she filed her EEOC charge, her claims were timely filed with the EEOC.

The Court disagrees. As an initial matter, each of the three most recent acts that Francois alleges are discrete. Completed acts that occur a single time, like termination through discharge or resignation, are precise examples of activities that do not involve the sort of ongoing policy or mechanism that the continuing violation doctrine demands. *See Silva-Markus v. N.Y.C. Dep't of Educ.*, No. 19 Civ. 4335 (PGG), 2020 WL 5819555, at *6 (S.D.N.Y. Sept. 30, 2020) (finding the constructive discharge of a teacher to be a discrete act under the ADEA); *see also Gaston v. N.Y.C. Dep't of Health Off. of Chief Med. Exam'r*, 432 F. Supp. 2d 321, 328 (S.D.N.Y. 2006) (concluding in the Title VII context that the employee's constructive discharge "constitutes a discrete act and that the 300-day time-limit applies . . . distinctly"). After all, the focus of this analysis is on the employer's alleged actions, rather than whether the employee continues to feel the effects of those actions over time. *Sirisena v. City Univ. of N.Y.*, No. 17 Civ. 7135 (DLI) (RML), 2019 WL 1493220, at *4 (E.D.N.Y. Mar. 31, 2019); *see also Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980). Here, the Department's alleged constructive discharge of Francois is the type of isolated incident that defines a discrete act, rather than a continuing violation. *See Silva-Markus*, 2020 WL 5819555, at *6 (holding that the alleged constructive discharge occurring within the statutory period constituted a discrete act to which the continuing violation doctrine does not apply). And just as an employee's discharge or termination has been deemed a discrete act because of its singular nature, courts have repeatedly held that this same principle applies to the receipt of a negative performance review or rating. *See, e.g.*, *id.* (holding that a

teacher's unsatisfactory rating in the context of the ADEA is a discrete act to which the continuing violation doctrine does not apply) (collecting cases in the ADEA and Title VII contexts in which courts have held a negative review or poor performance rating to constitute a discrete act). As such, Francois's receipt of her ineffective rating on October 11, 2017 is also a discrete act. *See id.* Finally, assuming that the Department's denial of Francois's appeal constitutes a discriminatory act, that act, which occurred within the 300-day period, is similarly singular in nature as Francois's original receipt of her ineffective rating.

Thus, the three most recent alleged discriminatory acts "seem more like 'a series of discrete, individual wrongs rather than a single and indivisible course of wrongful action.'" *See Davidson*, 2012 WL 2866248, at *10 (quoting *Pollis v. New Sch. for Soc. Rsch.*, 132 F.3d 115, 118–19 (2d Cir. 1997)). Accordingly, Francois's allegation that she was constructively discharged on August 31, 2017 is time-barred. So, too, is Francois's allegation that the Department discriminated against her on October 11, 2017 when she first learned of her ineffective rating for the 2016-2017 school year. Thus, only Francois's allegation of discriminatory activity occurring on May 31, 2018—the date on which Francois learned the Department had denied the appeal of her ineffective rating for the 2016-2017 school year— remains eligible under the ADEA's statute of limitations.

However, while a claim based on that action would not be time-barred, the Court concludes that the Department's denial of Francois's appeal is not an act of discrimination. *Borst v. New York City Department of Education*, No. 17 Civ. 3041 (RRM) (CLP), 2019 WL 4736737 (E.D.N.Y. Sept. 27, 2019) is instructive. In that case, the court held that the Department's denial of the plaintiff-teacher's appeal of its decision not to extend tenure was not an alleged discriminatory act that prolonged the plaintiff's time to file an EEOC charge. *Id.* at

\*6. Instead, the court reasoned that the Department's alleged discriminatory act occurred when it actually denied plaintiff tenure. *Id.* at \*5. The court distinguished the Department's denial of plaintiff's appeal from the denial of tenure itself. *See id.* The denial of plaintiff's appeal was merely a consequence or effect of the earlier alleged act of discrimination of not extending tenure, rather than a discrete instance of discrimination in itself. *Id.* The court made this distinction because "[i]n evaluating when the 300-day period begins, 'the proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful.'" *Id.* (quoting *Ricks*, 449 U.S. at 258). The court concluded that although the plaintiff appealed her denial of tenure within the statutory window, "'[t]he pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations period.'" *Id.* (quoting *Ricks*, 449 U.S. at 258). Similarly here, Francois's appeal, and the Department's subsequent denial of that appeal, "were attempts to remedy allegedly discriminatory acts" that had taken place on October 11, 2017 and earlier, and therefore did not extend the time to bring an EEOC charge. *See id.* at \*5–6; *see also Ricks*, 449 U.S. at 261; *Cutler v. City of New York*, No. 09 Civ. 5335 (PKC), 2010 WL 3469474, at \*7 (S.D.N.Y. Aug. 16, 2010) (holding in the context of an Americans with Disabilities Act claim that a plaintiff's "utilization of an internal appeals process" does not toll the statute of limitations).

      Because Francois has failed to allege any discriminatory actions upon which she can ground her ADEA claims that took place during the 300-day period, those claims must be dismissed. *See Davis-Garett*, 921 F.3d at 42. Although discrete acts like instances of employment discrimination are treated differently than hostile work environment claims for purposes of the ADEA's statute of limitations, Francois has not alleged any discriminatory

actions—neither discrete nor continuing in nature—that occurred within the 300 days before she filed her EEOC charge.

### B. Remaining State and City Law Claims

With her ADEA claims dismissed, Francois's remaining claims are based only in state and city law.  Where, as here, the only federal law claims have been eliminated before trial, the "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise jurisdiction over state law claims.  *See Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)); *see also Milord-Francois*, 2020 WL 5659438, at *24.  Accordingly, the Court declines to exercise supplemental jurisdiction over Francois's New York state and city law claims.

## IV. CONCLUSION

For the foregoing reasons, the Department's motion to dismiss is GRANTED, except that Francois's New York state and city law claims are dismissed without prejudice.  Francois is otherwise denied leave to replead.  The Clerk of the Court is respectfully directed to terminate the motion, Doc. 14, and to close the case.

It is SO ORDERED.

Dated:   February 16, 2021
         New York, New York

_____
EDGARDO RAMOS, U.S.D.J.